IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2006 FEB 21  P 3: 19

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| TONYA CHERYL MOSES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | Case No.: CV-3:06CV154-DRB |
| ) | |
| ALLSTATE INSURANCE COMPANY, ) | |
| EDDIE WATTS, DEXTER WALDEN, ) | |
| fictitious defendants A, B, C, D, and E, ) | |
| being those persons, companies, ) | |
| partnerships, or other entities who caused ) | |
| or contributed to cause the injuries and ) | |
| damages alleged herein through their ) | |
| negligent and/or intentional conduct and/or ) | |
| who are the successors in interest to any of ) | |
| named Defendants and/or who had ) | |
| supervisory control or the duty to supervise ) | |
| any of the named Defendants and F, G, H, I ) | |
| and J, said fictitious defendants being those ) | |
| corporations, partnerships, other business ) | |
| entities or other individuals who conspired ) | |
| with the named Defendants to further the ) | |
| conduct described in the complaint and/or ) | |
| who acted either independently or ) | |
| participated with others to commit the ) | |
| wrongful conduct complained of herein, ) | |
| whose name or names are unknown to the ) | |
| Plaintiff at this time but which will be ) | |
| substituted by amendment when ) | |
| ascertained, ) | |
| ) | |
| Defendants. ) | |

### NOTICE OF REMOVAL

COMES NOW the Defendant, ALLSTATE INSURANCE COMPANY, a Corporation, and files this Notice of Removal of this action from the Circuit Court of Russell County, Alabama, to the United States District Court for the Middle District of Alabama. As grounds hereto, this

Defendant shows unto the Court as follows:

## BACKGROUND OF THIS ACTION

1. The above-entitled cause has been brought in the Circuit Court for Russell County, Alabama, by service of the Summons and Complaint via certified mail on or about <u>November 16, 2005</u>, and is now pending therein. A complete copy of the lawsuit along with all State Court pleadings are attached as Exhibit "A" and are incorporated herein by reference. This case is being removed within 30 days of receipt of a pleading which indicates the case is removable and well within one year of the commencement of this action.

2. Said action is of a civil nature at law whereby Plaintiff seeks to recover damages in excess of $75,000 from the Defendants, exclusive of interest and costs.

## THE PLAINTIFF

3. Upon information and belief, and as pled in the Plaintiff's Complaint, the Plaintiff is a citizen of Russell County, Alabama.

## THE REMOVING DEFENDANT

4. At all times referred to in the Complaint including the date of filing of the Complaint, the Defendant, Allstate Insurance Company, was a foreign corporation organized and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois.

## THE FRAUDULENTLY JOINED DEFENDANTS

5. At all times referred to in the Complaint of the Plaintiff and at the present time, the Defendants, Eddie Watts and Dexter Walden, were and are citizens of the State of Alabama. For the purposes of this Notice of Removal, these Defendants are to be ignored as they have been fraudulently joined. Defendant Walden is an independent insurance agent who sold the policy in

question. Defendant Watts is an employee of an adjusting firm, Pilot Catastrophe, Inc. Allstate requested the assistance of Pilot Catastrophe, Inc. to assist in gathering information on this loss. Pilot then assigned its employee, Mr. Watts to inspect the home. Thus, neither Walden or Watts are employees of Allstate. Based on their sworn affidavits and simple logic, neither of these Defendants had any role whatsoever in decisions by Allstate concerning the process applied at Allstate to adjust claims.

## **GROUNDS FOR REMOVAL**

6. This case is being removed pursuant to 28 U.S.C. §1441 et seq., inasmuch as this action could have originally been brought in this Court pursuant to 28 U.S.C. §1332.

7. Although the case stated by the initial pleading was not removable, this Notice of Removal is timely filed because it is submitted within 30 days after the receipt by this Defendant of a copy of other paper from which it could first be ascertained that the case had become removable. 28 U.S.C. § 1446(b). To wit, this action was originally filed against Allstate Insurance Company and included a non-specific addamnum clause (See Plaintiffs' Complaint).

8. On or about December 21, 2005, this Defendant submitted Defendant's Request for Admission to Plaintiffs which sought to have Plaintiffs admit or deny that they will "never seek or attempt to recover from Allstate Insurance Company monetary damages in this case in excess of $75,000.00 exclusive of interest and costs." (See Defendant's Request for Admission to Plaintiffs attached hereto as Exhibit "B"). On or about January 21, 2006, counsel for this Defendant received Plaintiffs' Response to Request for Admissions. (Attached hereto as Exhibit "C"). Within the Response, Plaintiffs deny that they will never attempt to recover from Allstate any monetary sum in excess of $75,000.00 exclusive of interest and costs as a result of this litigation.

9. Pursuant to 28 U.S.C. § 1446 (b), "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion <u>or other paper from which it may first be ascertained that the case is one which is or has become removable</u> . . . " Thus, the thirty day window in which a Defendant must remove a case begins to run only when that Defendant receives notice -- in whatever form -- that the case is now removable. In the instant case, Notice of Removal is being filed within 30 days of the receipt of Plaintiffs' Response to Request for Admissions establishing the amount in controversy. In <u>Wilson v. GM Corporation</u>, 888 F. 2d 779 (11th Cir. 1989) the 11th Circuit Court of Appeals upheld a removal where the Defendant utilized Responses to Request for Admission as a establishing the basis for removal. In <u>Robinson v. GE Capital Mortgage Services, Inc.</u>, 945 F. Supp. 15-16 (M.D. Ala. 1996) the Plaintiff submitted a Complaint with a non-specific claim for damages. The Defendant responded by submitting a Request for Admission attempting to determine whether the jurisdictional minimum was at issue. Having received a Response to the Request for Admission indicating that the case was calling into controversy amounts exceeding the jurisdiction minimum, the Defendants promptly removed. The Court found that the removal was appropriate and the Motion to Remand was denied.

10. This Notice of Removal is also timely filed because it is being submitted within one year from the November 16, 2005, date of commencement of the action.

11. A true and correct copy of this Notice of Removal is being served on counsel for Plaintiffs this date.

12. A true and correct copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Russell County, Alabama this date.

13. No special bail was or is required in this action.

## JURISDICTION UNDER 28 U.S.C. §1332

14. This action could have originally been brought in this Court pursuant to 28 U.S.C. §1332 in that it is a civil action wherein the matter in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship among the parties Plaintiff and Defendants. (See discussion of fraudulent joinder, infra). As has often been the case in claims filed against insurers, Plaintiff's choice to file suit against Allstate was accompanied by the inclusion of two Defendants who have no role or responsibility whatsoever concerning the issues raised in the Complaint. As the Eleventh Circuit has recently pointed out, the consideration of fraudulent joinder must necessarily include the affidavits of one who has been fraudulently joined. Congress established the removal process to protect defendants. Congress "did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." Legg v. Wyeth, 428 F.3d 1317, 1325 (11th Cir. 2005) citing McKinney v. Bd. of Trustees of Mayland Cmty. Coll., 955 F.2d 924, 928 (4th Cir. 1992).

15. Plaintiff's suit arises from a storm, which allegedly produced damage to Plaintiff's home. With regard to the amount in controversy, Plaintiff's Complaint specifically alleges breach of contract, "bad faith" failure to pay, fraudulent suppression, breach of fiduciary duty, fraudulent failure to pay claim, conspiracy, unjust enrichment, negligently and/or wanton hiring, training, and/or supervision, bad faith refusal to investigate a claim, and demands compensatory and punitive damages. (See Plaintiff's Complaint, Count I-IX).

16. As to the amount in controversy this Defendant directs the Court to the Plaintiff's Response to Defendant's Request for Admission (Exhibit "C"). Based on Plaintiff's Responses to

Requests for Admission, Plaintiff's claims call into controversy amounts in excess of $75,000 exclusive of interest and costs.

17.    There is complete diversity of citizenship between the Plaintiff and Defendant Allstate, excluding the fraudulently joined Defendants.

## DEFENDANT EDDIE WATTS

18.    Within her complaint, Plaintiff asserts six (6) claims against Defendant Watts, specifically:

- Plaintiff claims **fraudulent suppression** alleging that Defendant Watts "had an affirmative duty to inform the Plaintiff of [Allstate's employment] of the consulting firm McKinsey & Company, the creation and results from CCPR, the involvement of Tech-Cor in the claims handling process, ... [and] that [Allstate] employed the use of McKinsey's Zero Sum Game." (See Plaintiff's Complaint, Count Three).

- Next, the Plaintiff alleges that Defendant Watts **breached his fiduciary duty** to the Plaintiff by failing to inform her at the time of the purchase of the policy:

    (1)    "That Allstate engaged in the practice of employing a consulting firm [McKinsey & Company];

    (2)    "Of Allstate's use of the CCPR Program, the Zero Sum Game and the 'Boxing Gloves' treatment",

    AND

    (3)    "That Allstate was using the judicial process to force the acceptance of lower claim payouts to policyholders [by] using its superior financial position to foster aggressive litigation practices against all policyholders and claimants."

(See Plaintiff's Complaint, Count Four).

- Plaintiff's third claim against Defendant Watts alleges the **<u>fraudulent failure to pay the claim</u>** by "suppressing with the express intent to deceive" Allstate's use of "CCPR, the use of the McKinsey and Company consulting firm, the employment of Tech-Cor, and the 'Boxing Gloves' treatment of first-party claimants." (See Plaintiff's Complaint, Count Five(a) ).

- Plaintiff alleges **<u>conspiracy</u>** against Defendant Watts asserting that he "conspired to create and implement the CCPR process and to conceal this material information from the public and its policyholders, as well as various state insurance commissioners." Additionally, Plaintiff asserts that Defendant Watts conspired with Allstate "to improperly deny the Plaintiff's just claim for their own benefit, because incentives and rewards were offered to the Defendant Watts for the improper denial of the Plaintiff's claim." (See Plaintiff's Complaint, Count Five(b) ).

- Plaintiff alleges that Defendant Watts "was **<u>unjustly enriched</u>** because of the rewards that were given to him for the improper denial of the Plaintiff's just claim" resulting in injuries to the Plaintiff. (See Plaintiff's Complaint, Count Six).

- Plaintiff asserts a claim of **<u>bad faith refusal to investigate a claim</u>** alleging that Defendant Watts "failed or refused to adequately investigate Plaintiff's just claim" and "as a result of [Defendant Watts'] bad faith failure to investigate, the Plaintiff was injured." (See Plaintiff's Complaint, Count Eight).

19. The citizenship of Eddie Watts is to be disregarded as he has been fraudulently joined in this action. Such fraudulent joinder is evidenced by the following:

(a) **<u>Fraudulent Suppression</u>**:

Under Alabama law, "to establish a claim of fraudulent suppression, a Plaintiff must produce substantial evidence establishing the following elements: (1) that the Defendant had a duty to disclose an existing material fact; (2) that the Defendant suppressed that existing material fact; (3) that the Defendant had actual knowledge of the fact; (4) that the Defendant's suppression of the fact induced the Plaintiff to act or to refrain from acting; and (5) that the Plaintiff suffered actual damage as a proximate result. <u>State Farm Fire & Cas. Co. v. Slade</u>, 747 So.2d 293, 323-324 (Ala. 1999).; <u>Dodd v. Nelda Stephenson Chevrolet, Inc.</u>, 626 So.2d 1288, 1293 (Ala. 1993). In the present case, Defendant Watts was unaware of any information concerning Allstate's relationship with McKinsey & Company. (Watts Affidavit, Exhibit D). Additionally, Watts was never involved, trained, provided with any documents or had any personal knowledge regarding any claim handling process known as Core Claims Process Redesign "CCPR," "Tech-Cor," or any gaming strategy known as a Zero Sum Game Theory in regards to the adjustment of losses. (Watts Affidavit, Exhibit D). Therefore, based on Alabama law, because Defendant Watts was never aware of the aforementioned facts, the Plaintiff's claim of fraudulent suppression cannot be supported. This conclusion is not surprising given that Watts is <u>not</u> an employee of Allstate but instead an employee of a totally separate adjusting company. His lack of knowledge about the conduct of Allstate and the development of Allstate adjusting is completely logical. As his affidavit establishes, he was not trained or educated by Allstate on any of the issues Plaintiff has raised.

(b) **<u>Breach of Fiduciary Duty</u>:**

There is no indication under Alabama law that an employee of an insurance company, much less an employee of an adjusting firm employed by an insurance company, is in a fiduciary relationship with the insurer's policy holder. Even assuming, arguendo, that such a burden were placed on Defendant Watts, the affidavits before the Court establish that Watts had no information which Plaintiff alleges should be passed on to the policy holder. Thus, assuming that Watts held a personal fiduciary duty to Plaintiff, there could be no failure on his part where he did not possess the knowledge which is claimed to have been withheld.

(c) **<u>Fraudulent Failure to Pay Claim</u>:**

Plaintiff alleges a claim for fraudulent failure to pay generally against "The Defendants," however she does not address a specific claim against Defendant Watts. This claim appears to simply restate the general fraud theory alleged in Count Three of Plaintiff's Complaint which has been addressed specifically in 19 (a) of this Notice of Removal. Moreover, in his affidavit, Defendant Watts offers sworn testimony that he was not responsible for the decision to accept or deny Plaintiff's claim with

Allstate. (Watts Affidavit, Exhibit D).

(d)  **Conspiracy:**

In <u>McLemore v. Ford Motor Co.</u>, 628 So.2d 548, 550 (Ala. 1993), the Alabama Supreme Court held that a civil conspiracy required a combination of two or more individuals to accomplish an unlawful purpose or to accomplish a lawful end by unlawful means. In addition to a meeting of the minds between the conspirators, the Plaintiff is further required to prove that the Defendants intended to bring about the object of the claimed conspiracy. <u>First Bank of Childersburg v. Florey</u>, 676 So.2d 324, 327 (Ala.Civ.App.1996). In his affidavit, Defendant Watts offers sworn testimony that he was never involved, had any personal knowledge or participated in any role whatsoever in the creation or implementation of the CCPR process. (Watts Affidavit, Exhibit D). As previously noted, his affidavit clearly states that he was not responsible for the decision to accept or deny Plaintiff's claim. (Watts Affidavit, Exhibit D). Additionally, Watts offers testimony that he was not aware of any practice where Allstate tied compensation for adjusters to the amount of money paid out in claims and he has never received compensation based on the amount of money paid out on a claim. (Watts Affidavit, Exhibit D). Therefore, because Defendant Watts did not possess the requisite knowledge of the conspiracy claimed in Plaintiff's Complaint, there could be no meeting of the minds or any intent to bring about such a conspiracy.

(e)  **Unjust Enrichment:**

The law in Alabama regarding unjust enrichment is unambiguous. "One is unjustly enriched if his retention of a benefit would be unjust." <u>Welch v. Montgomery Eye Physicians, P.C.</u>, 891 So.2d 837, 843 (Ala. 2004), *citing* <u>Jordan v. Mitchell</u>, 705 So.2d 453, 458. (Ala.Civ.App.1997). The <u>Jordan</u> court continued:

> Retention of a benefit is unjust if (1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched. *Id.* at 458

The affidavit of Watts establishes that he was not unjustly enriched in the course of his employment for Pilot Catastrophe Inc. Watts has offered his sworn testimony by affidavit that there was <u>no compensation</u> paid to him through Pilot, Allstate or anyone else in exchange for or as a direct result of a decision to deny Plaintiff's claim. As noted above, the sworn testimony by Watts indicates that he played no role

in the matters alleged and was not an employee of Allstate. Therefore, it would be impossible for Watts to of engage in unconscionable conduct, fraud, coercion, or abuse of a confidential relationship where he had no knowledge of the matters raised by the Plaintiff.

(f) **Bad Faith Refusal to Investigate:**

Under Alabama law, an insurer has an obligation to perform "the duty of good faith and fair dealing implied in law." Koch v. State Farm Fire & Casualty Co., 565 So. 2d 226, 229 (Ala. 1990). A breach of this duty creates a cause of action only against the insurance carrier for "bad faith failure to investigate." It has been established that there is no claim for "bad faith" against the individual employee of the insurer. Pate v. Rollison Logging Equip., Inc., 628 So. 2d 337, 343 (Ala. 1993); Ligon Furniture Co. v. O.M.Hughes Ins., Inc., 551 So. 2d 283, 285 (Ala. 1989). Clearly, Plaintiffs' assertions of liability against Watts fail to set forth a cause of action under Alabama law.

## DEFENDANT DEXTER WALDEN

20. Within her complaint, Plaintiff asserts four (4) claims against Defendant Walden, specifically:

- Plaintiff claims **fraudulent suppression** alleging that Defendant Walden "had an affirmative duty to inform the Plaintiff of [Allstate's employment] of the consulting firm McKinsey & Company, the creation and results from CCPR, the involvement of Tech-Cor in the claims handling process, ... [and] that [Allstate] employed the use of McKinsey's Zero Sum Game." (See Plaintiff's Complaint, Count Three).

- Next, the Plaintiff alleges that Defendant Walden **breached his fiduciary duty** to the Plaintiff by not informing her at the time of the purchase of the policy:

    (1) "That Allstate engaged in the practice of employing a consulting firm [McKinsey & Company];

    (2)    "Of Allstate's use of the CCPR Program, the Zero Sum Game and the 'Boxing Gloves' treatment",

          AND

    (3)    "That Allstate was using the judicial process to force the acceptance of lower claim payouts to policyholders [by] using its superior financial position to foster aggressive litigation practices against all policyholders and claimants." (See Plaintiff's Complaint, Count Four).

- Plaintiff's third claim against Defendant Walden alleges the **<u>fraudulent failure to pay the claim</u>** by "suppressing with the express intent to deceive" Allstate's use of "CCPR, the use of the McKinsey and Company consulting firm, the employment of Tech-Cor, and the 'Boxing Gloves' treatment of first-party claimants." (See Plaintiff's Complaint, Count Five(a) ).

- Plaintiff alleges **<u>conspiracy</u>** against Defendant Walden asserting that he "conspired to create and implement the CCPR process and to conceal this material information from the public and its policyholders, as well as various state insurance commissioners." Additionally, Plaintiff asserts that Defendant Walden conspired with Allstate "to improperly deny the Plaintiff's just claim for their own benefit, because incentives and rewards were offered to the Defendant Walden for the improper denial of the Plaintiff's claim." (See Plaintiff's Complaint, Count Five(b) ).

21.    The citizenship of Dexter Walden is to be disregarded as he has been fraudulently joined in this action. Such fraudulent joinder is evidenced by the following:

(a)     **Fraudulent Suppression**:

Like Defendant Watts, Defendant Walden had no personal knowledge of any relationship between Allstate and McKinsey & Company. (Walden Affidavit, Exhibit E). He has offered sworn testimony that he is not familiar with the "CCPR Program," that he never had any involvement in the development, creation, preparation or implementation of the CCPR Program and is not familiar with Allstate's procedures or processes in the adjustment of claims. (Walden Affidavit, Exhibit E). Additionally, Walden has never been involved or had any personal knowledge regarding "Tech-Cor," or the use of McKinsey's alleged Zero Sum Game Theory in regards to the adjustment of losses. (Walden Affidavit, Exhibit E). Again, Mr. Walden is an insurance agent. He is not an employee of Allstate. The allegation that he is somehow responsible for conduct attributed to Allstate is factually and legally meritless. Therefore, as with Defendant Watts, Plaintiffs' assertions of liability against Walden fail to set forth a cause of action under Alabama law.

(b)     **Breach of Fiduciary Duty**:

As an agent for Allstate, Defendant Walden completed an arms length transaction with the Plaintiff by selling her a homeowner's policy of insurance. (Walden Affidavit, Exhibit E). As noted above, there is no indication under Alabama law that a fiduciary relationship exists as a result of this transaction. The Alabama Supreme Court has held that "when parties to transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose arises when information is not requested, for purposes of claim of fraud by silence." Bama Budweiser of Montgomery, Inc. V. Anheuser-Busch, 611 So.2d 238, 246 (Ala. 1992). Like Defendant Watts, even assuming, arguendo, that such a burden were placed on Defendant Walden, the affidavits before the Court establish that Walden had no information which Plaintiff alleges should be passed on to the policy holder. Thus, assuming a personal fiduciary duty to Plaintiff did exist, there could be no failure on the part of Walden where he did not possess the knowledge which is claimed to have been withheld. Again, this Court should be mindful of Plaintiff's effort to allege knowledge and responsibility on the part of Walden for conduct by a separate company relating to issues foreign to his tasks as an insurance agent.

(c)     **Fraudulent Failure to Pay Claim**:

Plaintiff alleges a claim for fraudulent failure to pay generally against "The Defendants," however she does not address a specific claim against Defendant Walden. This claim appears to simply restate the general fraud theory alleged in

Count Three of Plaintiff's Complaint which has been addressed specifically in 21(a) of this Notice of Removal. Moreover, in his affidavit, Defendant Walden offers sworn testimony that he has no role in the acceptance or denial of claims on behalf of Allstate. (Walden Affidavit, Exhibit E).

(d) **Conspiracy:**

Like Defendant Watts, Defendant Walden was never involved, had any personal knowledge or participated in any role whatsoever in the creation or implementation of the CCPR process. (Walden Affidavit, Exhibit E). His affidavit clearly states that he is an agent and his job does not involve the adjustment of claims or any role in the process of deciding whether to accept or deny Plaintiff's claim. (Walden Affidavit, Exhibit E). Therefore, because Defendant Walden did not possess the requisite knowledge of the conspiracy claimed in Plaintiff's Complaint, there could be no meeting of the minds or any intent to bring about such a conspiracy.

22. Based on the above facts and allegations, as well as the attached affidavits, the addition of Eddie Watts and Dexter Walden as Defendants constitutes fraudulent joinder. As this Court is well aware, fraudulent joinder exists when there is no possibility that the Plaintiff would be able to establish a cause of action against the resident Defendant or there has been an outright fraud in the Plaintiff's pleading of jurisdictional facts. Cabalceta v. Standard Fruit Co., 883 F. 2d 1553, 1561 (11th Cir. 1989); Mask v. Chrysler Corp., 825 F. Supp. 285, 288 (N.D.Ala. 1993), aff'd., 29 F. 3d 641 (11th Cir. 1994); Autrey v. United Companies Lending Corp., 872 F. Supp. 925 (S.D.Ala. 1995). "The determination of whether a resident defendant has been fraudulently joined must be based upon the Plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005) *quoting* Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). The causes of action and facts before the Court establish the Plaintiff's fraudulent joinder of Eddie Watts and Dexter Walden. Therefore, their presence in this action is to be disregarded

in determining the existence of diversity. See <u>Mask v. Chrysler</u>, 825 F. Supp. 285 (N.D.Ala. 1993).

23. Defendants join in an consent to this removal.

24. This suit is removed to this Court, under and by virtue of the Acts of Congress of the United States, and the Defendants are desirous of removing said cause to this Court.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the above-entitled cause be removed to the United States District Court for the Middle District of Alabama, Eastern Division, according to the statutes in such case made and provided.

DONE this the 21st day of February, 2006.

Respectfully submitted,

_____
Thomas E. Bazemore, III
Douglas R. Kendrick
Gordon J. Brady, III
Huie, Fernambucq & Stewart, LLP
Three Protective Center
2801 Highway 280 South
Birmingham, Alabama 35223
205-251-1193
205-251-1256
teb@hfsllp.com
drk@hfsllp.com
gjb@hfsllp.com

## CERTIFICATE OF SERVICE

  I hereby certify that I have mailed by United States Postal Service the foregoing document to the following:

JINKS, DANIEL & CROW, P.C.
Post Office Box 350
Union Springs, AL 36089
(334) 738-4225

JOSEPH G. STEWART, JR., P.C.
P.O. Box 911
Montgomery, AL 36101-0911
(334) 263-3552

                   /s/ Douglas R. Kendrick
                   Douglas R. Kendrick
                   Huie, Fernambucq & Stewart, LLP
                   Three Protective Center
                   2801 Highway 280 South
                   Birmingham, Alabama 35223
                   205-251-1193
                   205-251-1256
                   drk@hfsllp.com